# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SETI JOHNSON and SHAREE SMOOT, on behalf of themselves and those similarly situated,

      Plaintiffs,

v.

TORRE JESSUP, in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles,

      Defendant.

Case No.

_____

(CLASS ACTION)

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.    PRELIMINARY STATEMENT

1.    Plaintiff Mr. Seti Johnson, a 27-year-old Black father of three, faces an impossible dilemma. Because he has been unemployed and cannot afford to pay off a traffic ticket, the North Carolina Division of Motor Vehicles (the "DMV") has automatically entered an order revoking his license, which will become indefinitely effective on or around July 24, 2018. Mr. Johnson has just obtained a new job, which provides a potential path to upward mobility and to paying off that ticket. Without a driver's license, he will have to either forego the job and figure out a different way to get his children to school, daycare, and the doctor's office, or he will have to illegally drive.

2.    Plaintiff Ms. Smoot, a 31-year-old Black mother, faces the same dilemma. Her license was revoked in 2016 and 2018 because she has been unable to pay her traffic

1

tickets. A revoked license has forced her to make the difficult choice of either driving illegally and risk arrest or additional tickets every day simply because there is no other way for her to support herself, her daughter, and her grandmother or stay at home and lose her job and ability to provide for her and her family's daily needs.

3. Mr. Johnson's and Ms. Smoot's plights are common throughout North Carolina. The DMV has indefinitely revoked the drivers' licenses of hundreds of thousands of people who cannot afford to pay fines, penalties, and court costs (hereinafter "fines and costs") assessed for traffic offenses. In a state where a driver's license is indispensable to mobility and economic self-sufficiency, this wealth-based license revocation scheme strips impoverished North Carolinians' of their capacity to meet their basic needs and those of their families. As a result, hundreds of thousands of North Carolinians cannot legally use a car to secure and maintain employment, take their children to and from school, attend medical appointments, or travel to buy groceries needed for daily life. This license revocation scheme forces the most economically vulnerable further into poverty, in violation of their right to due process and equal protection of the law under the U.S. Constitution.

4. The DMV automatically revokes a motorist's driver's license for an indefinite period of time if the motorist is reported for nonpayment of a traffic ticket within forty days. There is no hearing or inquiry into the driver's ability to pay before the imposition of this additional, unnecessary punishment. The revocation notice that the DMV provides the driver makes clear the driver must pay the citation in full or the

2

revocation will become effective sixty days later, and it fails to disclose any other alternatives for people who cannot afford to pay in full. This automatic revocation scheme occurs without any determination of ability to pay, sufficient notice, and an opportunity to be heard, in violation of core principles of due process and equal protection of the law.

5.     Pursuant to this automatic process—codified at Section 20-24.1 of the North Carolina General Statutes, and effectuated by the DMV—over 436,000 drivers' licenses were revoked for non-payment of fines and costs as of Fall 2017. This high volume of revocations is not surprising, given that nearly 15.4% of North Carolina residents (1.4 million) live in poverty North Carolina, according to the U.S. Census Bureau. The State has some of the highest rates of poverty in the nation, with 6.7% of the population living below half of the poverty line. For those who can afford to pay, fines and court costs are a mere inconvenience. But for those who cannot afford to pay, fines or costs mean the loss of their driver's licenses, which frequently has much more serious economic consequences. This is especially true in a state like North Carolina where a vast majority of counties are rural and lack accessible public transportation.

6.     Plaintiffs in this lawsuit are low-income North Carolinians who face irreparable, ongoing harm, in violation of due process and equal protection, because: (a) their driver's licenses will be revoked under North Carolina's license revocation scheme, N.C.G.S. § 20-24.1, which mandates the automatic revocation of licenses of those who do not pay their fines and costs, and under the DMV's enforcement practice, or (b) their

3

licenses have already been revoked under N.C.G.S. § 20-24.1 and the DMV's enforcement practice for non-payment of fines and costs.

7.     Plaintiff Mr. Johnson is a victim of North Carolina's unconstitutional license revocation scheme.  He was ordered to pay $228; is unable to do so because he has been unemployed for an extended period of time; and as a result, the DMV has entered an order revoking his license, which will become indefinitely effective on or around July 24, 2018. Defendant has not inquired into Mr. Johnson's ability to pay, given him an opportunity to be heard before he faces revocation of his driver's license, or sent him adequate notice of how he can prevent the revocation if he cannot pay.

8.     Plaintiff Ms. Sharee Smoot is also victim of North Carolina's unconstitutional license revocation scheme.  Ms. Smoot was also convicted of traffic offenses and ordered to pay fines and costs, but could not afford to pay these tickets.  The DMV revoked Ms. Smoot's driver's license because she was unable to afford the fines and costs. Defendant made no inquiry into her ability to pay or whether her nonpayment was willful.  The only notice Ms. Smoot received was that she had to pay her citation in full. She was not given notice of any other options to avoid revocation if she could not afford to pay.

9.     Plaintiffs Mr. Johnson and Ms. Smoot are not alone.  North Carolina punishes hundreds of thousands of low-income people by revoking their drivers' licenses simply because of their economic status.  Accordingly, Plaintiffs bring these claims on behalf of themselves and all others similarly situated to challenge the unconstitutional license

revocation scheme established by Section 20-24.1 as well as the DMV's enforcement of that scheme.

10.     Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate their rights to due process and equal protection of the law under the Fourteenth Amendment to the U.S. Constitution. Plaintiffs seek: (1) a declaration that both Section 20-24.1 and the DMV's enforcement of the statute are unconstitutional; (2) an injunction enjoining the DMV from revoking any driver's license for non-payment under Section 20-24.1; and (3) an injunction mandating the DMV to lift license revocations previously entered, and to restore the licenses of individuals that were revoked, for non-payment under Section 20-24.1.

## II.     JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III.     PARTIES

### A. **<u>Plaintiffs</u>**

13.     Plaintiff Seti Johnson is a resident of Cabarrus County.

14.     Plaintiff Sharee Smoot is a resident of Cabarrus County.

### B. **<u>Defendant</u>**

15.     Defendant Torre Jessup is the Commissioner of the North Carolina Division of Motor Vehicles, who administers the DMV. In this role, Defendant has exclusive

5

authority to revoke driver's licenses.  N.C.G.S. §§ 20-2(a); 20-39(a).  He is sued in his official capacity as a state actor for declaratory and injunctive relief only.

## IV.    STATEMENT OF FACTS

### A.  A Driver's License is a Necessity to Pursue a Livelihood and Care for One's Self and Family.

16.     As of Fall 2017, over 436,000 individuals had their licenses indefinitely revoked by the DMV for failure to pay fines and costs assessed for motor vehicle offenses.

17.     The indefinite revocation of driver's licenses for nonpayment of fines and costs disproportionately affects low-income persons and communities of color.

18.     The indefinite revocation of the drivers' licenses of low-income North Carolinians, including Plaintiffs Mr. Johnson and Ms. Smoot, erects significant barriers to the ability to pursue a livelihood and meet basic human needs.  Eighty-six percent of Americans describe a car as a "necessity of life," which is higher than the percentage of people who identified air conditioning, a cell phone, a computer, and other consumer items to be a life necessity.[1]

19.     Approximately 91% of North Carolina residents travel to work by car and only 1.1% travel to work by public transit.[2]

---

[1] Paul Taylor and Wendy Wang et al., *The Fading Glory of The Television and Telephone*, Pew Research Center 1 (Aug. 10, 2010), https://goo.gl/5knWYW.

[2] U.S. Dep't of Transp., Bur. of Transp. Stats., *NORTH CAROLINA: Transportation by the Numbers* 2 (2016), https://goo.gl/eM6NWy.

20.     Reliable, accessible public transit remains scarce throughout the vast majority of North Carolina, particularly in the State's rural counties.[3]  Public transit services in urban areas of the State also provide limited access to jobs.[4]

21.     As a result, the lack of public transportation options remains a significant and ubiquitous barrier to obtaining and maintaining employment for many North Carolinians.[5]

22.     Several studies have noted that a driver's license is a "very common requirement" to obtain employment, including most jobs that "can actually lift people out of poverty."[6]

23.     Thus, North Carolina's unconstitutional automatic license revocation scheme makes it difficult for North Carolinians to find and keep employment, indefinitely pushing low-income individuals into the criminal justice system and further into poverty.

---

[3] Tazra Mitchell, *Connecting Workers to Jobs Through Reliable and Accessible Public Transport*, Policy & Progress, N.C. Justice Center (Nov. 2012), https://goo.gl/qOF0S (noting scarcity of public transit options); Chandra T. Taylor and J. David Farren et al., *Beyond the Bypass: Addressing Rural North Carolina's Most Important Transportation Needs*, So. Envtl. Law Ctr. 1 (2012) (noting rural nature of the state), https://goo.gl/nUVHjG.

[4] Mitchell, *supra* note 3.

[5] *Id.*

[6] *See, e.g.*, Alana Semuels, *No Driver's License, No Job*, The Atlantic, June 15, 2016, https://goo.gl/xQjyLj; *see also* Stephen Bingham et al., *Stopped, Fined, Arrested: Racial Bias in Policing and Traffic Courts in California* 26–28 (2016), https://goo.gl/uLhFfL (finding license suspensions cause loss of employment because employers often screen out those without licenses and because drivers' licenses are necessary for: transportation to and from work; to obtain full time, steady employment; and for job-training programs).

7

24.     Persons whose licenses are revoked face an unenviable choice: drive illegally and risk further punishment, or stay home and forgo the ability to meet the daily needs of themselves and their families. When faced with either losing their jobs or remaining unemployed, or otherwise risking being pulled over for driving with a revoked license, individuals often chose the latter—risking car impoundment, additional fines and costs, additional periods of revocation, and even imprisonment for driving on a revoked license— so they can maintain their livelihood and support their families.

**B.** **The DMV Automatically Revokes Drivers' Licenses For Non-Payment of Traffic Fines and Costs Pursuant to N.C.G.S. § 20-24.1.**

25.     Revocation of drivers' licenses is the exclusive province of the Commissioner of the North Carolina Division of Motor Vehicles. N.C.G.S. §§ 20-2(a); 20-39(a).

26.     Courts in North Carolina are required to report to the DMV the name of any person charged with a motor vehicle offense who fails to pay a fine, penalty, or costs within 40 days of the date specified in the court's judgment. N.C.G.S. § 20-24.2(a)(2).

27.     Pursuant to Section 20-24.1(a),[7] the DMV is required to revoke, and does revoke, an individual's driver's license after it receives notice from a court that the person

---

[7] The pertinent subsections of Section 20-24.1 read, in relevant part:

> (a) The Division must revoke the driver's license of a person upon receipt of notice from a court that the person was charged with a motor vehicle offense and he:
>
> . . .

8

(2) failed to pay a fine, penalty, or court costs ordered by the court.

Revocation orders entered under the authority of this section are effective on the sixtieth day after the order is mailed or personally delivered to the person.

(b) A license revoked under this section remains revoked until the person whose license has been revoked:

 . . .

(2) demonstrates to the court that he is not the person charged with the offense; or

(3) pays the penalty, fine, or costs ordered by the court; or

(4) demonstrates to the court that his failure to pay the penalty, fine, or costs was not willful and that he is making a good faith effort to pay or that the penalty, fine, or costs should be remitted.

Upon receipt of notice from the court that the person has satisfied the conditions of this subsection applicable to his case, the Division must restore the person's license as provided in subsection (c). . . .

(b1) A defendant must be afforded an opportunity for a trial or a hearing within a reasonable time of the defendant's appearance. Upon motion of a defendant, the court must order that a hearing or a trial be heard within a reasonable time.

(c) If the person satisfies the conditions of subsection (b) that are applicable to his case before the effective date of the revocation order, the revocation order and any entries on his driving record relating to it shall be deleted and the person does not have to pay the restoration fee set by G.S. 20-7(i1). For all other revocation orders issued pursuant to this section, G.S. 50-13.12 or G.S. 110-142.2, the person must pay the restoration fee and satisfy any other applicable requirements of this Article before the person may be relicensed.

. . . .

N.C. Gen. Stat. Ann. § 20-24.1.

9

has not paid fines and costs. This revocation is automatic and occurs without any regard to whether the person lacks the ability to pay. Upon receipt of this notice, the DMV enters a revocation order. *Id.* § 20-24.1(a)(2). By statute, the revocation order becomes effective 60 days after it is mailed or personally delivered to the motorist. *Id.* § 20-24.1(a).

### a. Revocation Notice

28. The DMV sends the revocation order to a driver upon receipt of a notice from the court that the driver failed to pay fines and costs, as described in Paragraph 27. The DMV labels this revocation order an "Official Notice" (hereinafter, "Revocation Notice"). A copy of a standard Revocation Notice is as follows:

```
                                        01/10/2018

SHAREE ANTONETTE SMOOT
3726 PATRIOTS PLACE DR
CONCORD NC  28025-6033

                              OFFICIAL NOTICE
                              CUSTOMER NO. 000028880058

WE REGRET TO INFORM YOU THAT EFFECTIVE 12:01 A.M., 03/11/2018, YOUR NC
DRIVING PRIVILEGE IS SCHEDULED FOR AN INDEFINITE SUSPENSION IN ACCORDANCE
WITH GENERAL STATUTE 20-24.1 FOR FAILURE TO PAY FINE AS FOLLOWS:

VIOLATION DATE:  2017-08-02        CITATION NUMBER:        04G82989
COURT:           CABARRUS COUNTY COURT  PHONE:  (704)262-5500

UNFORTUNATELY THE DIVISION OF MOTOR VEHICLES CANNOT ACCEPT PAYMENTS FOR
FINES AND COSTS IMPOSED BY THE COURTS.  PLEASE CONTACT THE COURT ABOVE TO
COMPLY WITH THIS CITATION.

NOTE:  PLEASE COMPLY WITH THIS CITATION PRIOR TO THE EFFECTIVE DATE IN ORDER
TO AVOID THIS SUSPENSION.

IF YOU HAVE NOT COMPLIED WITH THIS CITATION BY THE EFFECTIVE DATE OF THIS
ORDER, YOU WILL NEED TO MAIL YOUR CURRENT NORTH CAROLINA DRIVER LICENSE, IF
APPLICABLE, TO THE DIVISION.  FAILURE TO DO SO MAY RESULT IN AN ADDITIONAL
$50.00 SERVICE FEE.

REINSTATEMENT PROCEDURES:

UPON COMPLIANCE WITH THIS CITATION, YOU MAY VISIT YOUR LOCAL DRIVER LICENSE
OFFICE.  AT SUCH TIME PROPER IDENTIFICATION AND PROOF OF AGE WILL BE NEEDED.

A RESTORATION FEE OF    $65.00 AND THE APPROPRIATE LICENSE FEES ARE NEEDED
AND HAVE TO BE PAID AT THE TIME YOUR DRIVING PRIVILEGE IS REINSTATED.

THIS ORDER IS IN ADDITION TO AND DOES NOT SUPERSEDE ANY PRIOR ORDER ISSUED
BY THE DMV. IF ADDITIONAL INFORMATION CONCERNING THIS ORDER IS NEEDED,
PLEASE CONTACT A REPRESENTATIVE OF THE DIVISION AT (919)715-7000.

DIRECTOR OF PROCESSING SERVICES
```

N.C. DMV, Revocation Notice to Plaintiff Sharee Smoot (Jan. 10, 2018).

29.     The Revocation Notice states that the driver's "driving privilege is scheduled for an indefinite suspension in accordance with general statute 20-24.1 for failure to pay [a] fine"; provides an "effective date" that is approximately 60 days from the date the notice is mailed; and identifies the violation date, citation number, court, and court phone number related to the unpaid fine.  *Id.*

30.     The only guidance the Revocation Notice offers regarding how to prevent the revocation is that the driver must "comply" with the citation, as follows:

> PLEASE COMPLY WITH THIS CITATION PRIOR TO THE EFFECTIVE
> DATE IN ORDER TO STOP THIS SUSPENSION.

*Id.*

31.     Once a license is indefinitely revoked for non-payment, the DMV only lifts the revocation once the person is in "compliance" with the underlying citation.  The Revocation Notice states:

> REINSTATEMENT PROCEDURES:
> UPON COMPLIANCE WITH THIS CITATION, YOU MAY VISIT YOUR
> LOCAL  DRIVER  LICENSE  OFFICE.  AT  SUCH  TIME  PROPER
> IDENTIFICATION AND PROOF OF AGE WILL BE REQUIRED.

*Id.*

32.     The Revocation Notice does not provide, and the DMV does not provide, any information about how to obtain a hearing on the pending revocation.

33.     Neither the Revocation Notice nor the DMV provides any information indicating that there are any options to permit persons to keep their licenses if they cannot pay in full.

34.     Neither the Revocation Notice nor the DMV provides any information to suggest that if a hearing is held, the person's ability to pay will be a critical issue at the hearing.

### b. Lack of any pre-revocation determination of ability to pay under Section 20.24.1

32.     Neither Section 20-24.1 nor the DMV requires any inquiry into ability to pay or a determination that motorists willfully failed to pay their fines and costs before revoking a driver's license for non-payment.

33.     Instead, if drivers cannot pay in full, Section 20-24.1 places the burden on motorists to request a hearing to restore their licenses by showing a court that non-payment was not willful and that they are making a good-faith effort to pay or the debt should be remitted. *Id.* § 20-24.1(b)(4). Yet, as set forth above, drivers are not informed about how to access this relief, and are told instead by the DMV that they must "comply" with the citation to avoid revocation, which, under the circumstances of the Revocation Notice, implies that the driver must pay the fines and costs in full. As a result, drivers rarely, if ever, invoke this process, leading to the revocation of tens, and possibly, hundreds of thousands of North Carolinians' drivers' licenses each year, without any hearing or determination that a single one of these motorists was able to pay and willfully failed to do so.

12

34.     If the motorist fails to satisfy Section 20-24.1(b), the license remains indefinitely revoked. *See id.* § 20-24.1(b), (c).

35.     Neither Section 20-24.1 nor the DMV, as a matter of standard practice, requires a hearing before the driver's license revocation becomes effective to determine whether non-payment was willful. *See id.* § 20-24.1.

36.     Accordingly, pursuant to Section 20-24.1, the DMV routinely revokes drivers' licenses for non-payment without inquiring into the individual's ability to pay and ensuring that any nonpayment is willful.

37.     Finally, pursuant to Section 20-24.1, the DMV routinely revokes drivers' licenses for non-payment without providing motorists adequate notice of the revocation process, including that ability-to-pay is a material fact to whether a license should be indefinitely revoked, and without providing them an opportunity to be heard on ability to pay and whether the non-payment was willful.

## C. <u>Plaintiff Mr. Johnson Faces the Unconstitutional Future Revocation of His Driver's License Pursuant to Section 20-24.1 Due to an Inability to Pay Fines and Costs.</u>

38.     Plaintiff Mr. Seti Johnson lives in Cabarrus County with his mother. Mr. Johnson is married and the father of three children. Mr. Johnson does not have stable income, and the limited income he does have is put towards his family's needs.

39.     Mr. Johnson has limited economic resources. He has struggled to maintain work, in part, because his license was revoked at least twice before because he was unable

13

to pay his traffic tickets, and because he needed to attend multiple court hearings regarding the unpaid tickets.

40.     Mr. Johnson needs his driver's license. He relies on his driver's license to search for work, and go to work when he is employed, and to travel to the grocery store, take his children to school and daycare, and to go to the doctor's office.

41.     Mr. Johnson is familiar with North Carolina's procedures for revoking driver's licenses for non-payment of fines and costs, and the hurdles erected for restoring licenses. Mr. Johnson previously has had this license revoked because he could not pay, and despite his limited income, surmounted the State's significant hurdles to restoration by paying to have his license reinstated.

42.     During the summer of 2017, Mr. Johnson was pulled over by the police while driving. The police officer took Mr. Johnson's license and told him he was doing so because he did not pay old traffic tickets. The police officer also issued Mr. Johnson a ticket for "DWLR not impaired" (i.e., driving while license revoked). When Mr. Johnson contacted the Cabarrus County District Court (the "District Court") to determine how to get his license reinstated, he was told the only option was to pay the unpaid fines and costs and any late fees in full.

43.     To get his license back, Mr. Johnson used his rent money to pay more than $700 in fines and costs. Mr. Johnson's driver's license was later reinstated by the DMV. In the meantime, Mr. Johnson fell behind on rent payments and eventually had no choice

14

but to move in with his mother for housing. During this time, Mr. Johnson also had to sacrifice buying necessities for himself and his children.

44.     Before Mr. Johnson paid the more than $700 and regained his license, he was issued another ticket for "DWLR not impaired" in September 2017.

45.     In April 2018, Mr. Johnson appeared in the District Court for the September DWLR. The prosecutor reduced the charge to "failure to notify DMV of address change," to which Mr. Johnson pled guilty. The District Judge sentenced Mr. Johnson to pay a $100 fine and $208 in court costs. The judge did not give Mr. Johnson options to resolve the fine and costs other than paying the total $308 to the District Court. Nor did the judge conduct a hearing to ask Mr. Johnson about his ability to pay the fines and costs.

46.     At that hearing, the prosecutor told Mr. Johnson that he would have to pay $100 that day or his license would be revoked. Mr. Johnson was unemployed at the time and had only $300 to his name, but he pulled together the $100 to pay that day to avoid losing his license.

47.     The District Court gave Mr. Johnson a Bill of Costs that states "total monies owed" are due "within 40 days" and that his license will be suspended if he does not pay in full. He was also charged an additional $20, referred to as an "installment plan set up fee," because he was not able to pay in full that day.

48.     Mr. Johnson's balance of $228 was due on May 22, 2018.

49.     Mr. Johnson has not paid the fine and costs, and cannot afford to pay at this time.

Case 1:18-cv-00467-TDS-LPA     Document 1     Filed 05/30/18     Page 15 of 35

50.     Although Mr. Johnson just secured a new job through a temp agency, he will need to use his initial paychecks to pay unpaid bills, such as an overdue mechanic bill, a phone bill, and approximately $2,000 in back rent.  Mr. Johnson's children also have immediate needs like diapers, clothes, and shoes.

51.     The DMV has entered an order revoking his license, and the revocation will become effective on or around July 24, 2018, unless he can pay his fines and costs in full, which he cannot afford to do.

52.     Without a driver's license, it will be difficult for Mr. Johnson to get to work, get food for his family, take his children to school and daycare, or take his family to doctor's appointments.  He will likely face the impossible choice of driving illegally to maintain his new job and provide for his family, or lose the job and face even greater burdens in providing for his family.

> ### D.  <u>Ms. Smoot Faces Ongoing Irreparable Harm Arising from the Unconstitutional Revocation of Her Driver's License Due to an Inability to Pay Fines and Costs.</u>

53.     Plaintiff Sharee Smoot lives in Cabarrus County, North Carolina, with her nine-year-old daughter and grandmother.  Ms. Smoot's driver's license is currently revoked because she was unable to pay fines, penalties, and court costs for several traffic tickets.

54.     Ms. Smoot currently works at a call-center forty-five minutes away from her home.  She has no family members, friends, or colleagues who can pick her up from, and drop her off at, work.  Nor is there accessible public transportation that Ms. Smoot can use to get to work.  Further, Ms. Smoot cannot afford to pay anyone to drive her to or from

16

work.  As a result, she is forced to make the difficult choice of losing her job and not being able to care for herself and her family or driving on a revoked driver's license and risking additional traffic tickets.

55.     In 2016, Ms. Smoot appeared on a ticket for "DWLR NOT IMPAIRED REV" (i.e., driving while license revoked) in the Cabarrus County District Court (the "District Court") and was convicted of the lesser charge of "failure to notify DMV of address change."

56.     The District Court sentenced Ms. Smoot to pay approximately $308, which she could not afford due to her limited economic resources.  The District Court did not give her any option to resolve the fine and court costs besides paying in full and did not conduct a hearing to inquire into or decide her ability to pay the fine and court costs.

57.     Ms. Smoot did not pay the fine and court costs within the 40 days ordered by the District Court because she did not have the money and as a result, was assessed a $50 late fee.

58.     Ms. Smoot later received a Revocation Notice from the DMV that her license would be effectively revoked if she did not pay by the designated date.  The Notice, however, did not tell her how to avoid the revocation or to reinstate her driver's license after the revocation, except to "comply" with the citation by the designated date.

59.     Because of her strained financial circumstances, Ms. Smoot did not pay the fine and costs by the designated date to attempt to stop the revocation of her license.

17

60.     Ms. Smoot's employment at the time only earned her $9 per hour, and she was receiving Supplemental Nutrition Assistance Program ("SNAP") benefits. She also was solely responsible for paying the rent and utilities for the residence she shared with her mother and daughter and her car note and car insurance. She also bought groceries and other necessities for herself and her daughter and mother. Between her SNAP benefits and income, she had barely enough money to meet her and her family's needs.

61.     Shortly after she started receiving overtime at work, Ms. Smoot's SNAP benefits were cancelled, forcing her to choose between her family's needs, like paying the light bill or buying groceries.

62.     Ms. Smoot also had to stop attending school at the University of North Carolina-Charlotte because she could not afford the cost of school and her family's bills on her limited income.

63.     Because of her limited financial means, Ms. Smoot could not pay the fine, penalty, and court costs on her 2016 ticket, and the DMV revoked her driver's license in 2016.

64.     In 2017, Ms. Smoot was convicted in the District Court of "DWLR NOT IMPAIRED REV" and ordered to pay $235, which she could not afford to pay that day.

65.     The District Court once again did not provide her any options to resolve the fine and court costs other than paying the $235 in full and did not conduct a hearing to inquire into or decide her ability to pay the fine and court costs.

18

66.     Ms. Smoot again could not pay the fine and costs within 40 days because she did not have the money and a result, was assessed a $50 late fee.

67.     Ms. Smoot received another Revocation Notice from the DMV in 2018, creating an additional basis for which her license is revoked. This second Notice also failed to inform her about how to avoid revocation, or how to reinstate her driver's license, except to "comply" with the citation by the designated date on the Notice.

68.     Around this time, Ms. Smoot fell behind on her car payments and rent, and her car was repossessed. Because she did not have transportation to work, she lost her job, and she and her daughter had to move in with her grandmother.

69.     Due to these circumstances, she also did not have the money to pay the fine, penalty, and court costs to stop the revocation by the date on this second Revocation Notice, and the DMV once again revoked her driver's license in 2018 for failure to pay.

70.     Ms. Smoot needs a driver's license to travel to work, doctor's appointments, and her church, and to get food for her daughter. Without a valid driver's license, she has had to make the difficult choice of staying home, losing her job, and not being able to care for herself, her daughter, and her grandmother, whose bills she also helps pay, or drive illegally and risk further punishment.

71.     Ms. Smoot, however, still does not have the money to pay either her 2016 ticket or 2017 ticket to reinstate her license.

19

72.     Ms. Smoot currently makes $12 per hour at the call center, but she often works fewer than 40 hours per week because she and other employees are often required to leave early if incoming call volume is low.

73.     Ms. Smoot worries that without use of a valid driver's license, she will not be able to continue working and caring for her family, or will continue getting more tickets for driving without a valid driver's license, because she needs to drive to support and care for herself and her family.

## V.     CLASS ALLEGATIONS

74.     Plaintiffs seek to certify two separate classes.

75.     Plaintiff Mr. Johnson seeks class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) related to Claims One, Two, and Three, for which prospective injunctive and declaratory relief is sought.  This Class is defined as: "All individuals whose drivers' licenses will be revoked in the future by the DMV due to their failure to pay fines, penalties, or court costs assessed by a court for a traffic offense."  This Class is referred to as the "Future Revocation Class."

76.     Plaintiff Ms. Smoot seeks class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) related to Claims One, Two, and Three, for which prospective injunctive and declaratory relief is sought.  This Class is defined as: "All individuals whose drivers' licenses have been revoked by the DMV due to their failure to pay fines, penalties, or court costs assessed by a court for a traffic offense." This Class is referred to as the "Revoked Class."

20

77.     A class action is the only practicable means by which Plaintiffs and unknown members of the Future Revocation Class and Revoked Class can challenge North Carolina's unconstitutional driver's license revocation law, Section 20-24.1, and the DMV's practice of automatically and indefinitely revoking licenses for non-payment.

78.     As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  This action also meets Rule 23(b)(2) Federal Rules of Civil Procedure.

79.     ***Numerosity***: The exact sizes of the Future Revocation Class and the Revoked Class are unknown by Plaintiffs, but each Class plainly meets the numerosity requirement, thereby making joinder impracticable.  Based on the DMV's response to an open records request, the Revoked Class had approximately 436,000 members in the fall of 2017—all individuals punished with an automatic and indefinite driver's license revocation for unpaid fines and costs.[8]  That number has remained in the hundreds of thousands and has likely increased since Fall 2017, due to the DMV's ongoing practice of automatically and indefinitely revoking the drivers' licenses of people unable to pay their fines and costs.

80.     The Future Revocation Class consists of hundreds of thousands of people who cannot or will not be able to afford to pay fines and costs and therefore face revocation of their licenses.  The Future Revocation Class is forward-looking with the potential for new members to join the Class on an ongoing basis.  The DMV will continue to revoke

---

[8] *See* Exhibit I to Declaration of Samuel Brooke, filed herewith.

licenses for non-payment absent the requested injunction, causing this class size to grow over time.

81.     Finally, members of the proposed Classes such as Plaintiffs Mr. Johnson and Ms. Smoot are spread out across the state, and they are typically low-income individuals who lack financial resources to bring an independent action or to be joined in this action. Putative members are facing or have experienced the revocation of their licenses precisely because of their inability to pay; thus, it is reasonable to assume they would also be unable to afford counsel to bring their own separate action against Defendant.

82.     **_Commonality_**: All persons comprising the proposed Classes are equally subject to the provisions of Section 20-24.1, which mandate the DMV to revoke a motorist's driver's license for non-payment without any determination a motorist willfully failed to pay and without providing adequate notice of, or an opportunity to be heard on, the effects of revocation before the revocation.  All members of the proposed Classes also are equally subject to the Division's revocation of driver's licenses for non-payment.

83.     Accordingly, Plaintiffs raise claims based on questions of law and fact that are common to, and typical of, the putative class members of both Classes they seek to represent, Common questions of fact include:

> a.  Whether Section 20-24.1 mandates the DMV to revoke, and whether the DMV has a practice of revoking, a license for non-payment without requiring a pre-deprivation hearing;

22

b. Whether Section 20-24.1 mandates the DMV to revoke, and whether the DMV has a practice of revoking, a license for non-payment without requiring an inquiry into a motorist's ability to pay and determining the motorist's non-payment was willful; and

c. Whether the revocation notice provided by the DMV to drivers whose licenses will be revoked for non-payment fails to inform drivers that (1) they may have a hearing before the revocation becomes effective; (2) a critical issue at that hearing will be their ability to pay fines and costs that they are alleged to have failed to pay; and (3) additional options exist under Section 20-24.1 to avoid revocation for those who cannot pay in full.

Common questions of law include:

d. Whether Section 20-24.1 and the DMV's enforcement of the statute violate the Fourteenth Amendment by failing to inquire into a motorist's ability to pay and whether the motorist's non-payment was willful before revoking a license for non-payment;

e. Whether Section 20-24.1 and the DMV's enforcement of the statute violate the Fourteenth Amendment Procedural Due Process Clause by revoking licenses before conducting a pre-deprivation hearing;

f. Whether Section 20-24.1 and the DMV's enforcement of the statute violate the Fourteenth Amendment Procedural Due Process Clause by failing to provide adequate advance notice and opportunity to be heard; and

g. Whether injunctive and declaratory relief is appropriate and if so, what the terms of such relief should be.

84.     The relief sought for each proposed Class is common to all members of that respective Class.   Plaintiffs seek relief declaring Section 20-24.1 and the DMV's enforcement of the statute are unconstitutional for both Classes.  They additionally seek: (a) on behalf of the Future Revocation Class, an order enjoining the DMV from revoking licenses for non-payment pursuant to Section 20-24.1, and (b) on behalf of the Revoked Class, an order mandating the DMV to lift license revocations entered under Section 20-24.1 and to restore the licenses of those whose licenses are presently revoked for non-payment under Section 20-24.1.

85.     ***Typicality***: The claims of Plaintiff Mr. Johnson are typical of the claims of the proposed Future Revocation Class as a whole.  Mr. Johnson and the putative Future Revocation Class members will suffer the same direct, irreparable injury of a loss of their driver's license unless Section 20-24.1 is declared unconstitutional and DMV is enjoined from revoking licenses pursuant to that statute, absent meaningful notice, a pre-revocation opportunity to be heard, and a determination of willful nonpayment before the revocation.

86.     Because Plaintiff Mr. Johnson and the proposed Future Revocation Class challenge the same unconstitutional statute, the DMV will likely assert similar defenses against Mr. Johnson and proposed Future Revocation Class members.  Moreover, the answer to whether the statute is unconstitutional will determine the success of the claims of named Mr. Johnson and every other proposed Future Revocation Class member: if Mr.

24

Johnson succeeds in the claim that the statute violates his constitutional rights, that ruling will likewise benefit every other member of the proposed Class.

87.     Likewise, the claims of Plaintiff Ms. Smoot are typical of the claims of the Proposed Revoked Class as a whole. Plaintiff Ms. Smoot and the putative Revoked Class members have suffered the same direct, irreparable injury of loss of their driver's license, and this injury will continue unless Section 20-24.1 and the DMV's corresponding practice to revoke for non-payment are declared unconstitutional and are enjoined.

88.     Because Plaintiff Ms. Smoot and the proposed Class challenge the same unconstitutional statute and DMV practice of enforcing the statute, the DMV will likely assert similar defenses against Ms. Smoot and proposed Revoked Class members. Moreover, the answer to whether the statute and the DMV's enforcement of the statute are unconstitutional will determine the success of the claims of Ms. Smoot and every other proposed Revoked Class member: if Ms. Smoot succeeds in the claim that the statute and DMV violate her constitutional rights, that ruling will likewise benefit every other member of the proposed Revoked Class.

89.     ***Adequacy***: Plaintiffs Mr. Johnson and Ms. Smoot will fairly and adequately represent the interests of the proposed Classes they seek to represent.

90.     Plaintiffs Mr. Johnson and Ms. Smoot have no interests separate from, or in conflict with, those of the proposed Classes they seek to represent and seek no relief other than the declaratory and injunctive relief sought on behalf of the entire proposed Classes.

91.     ***Rule 23(b)(2)***: Class action status under Rule 23(b)(2) is appropriate because the DMV has acted or failed and/or refused to act on grounds that generally apply to the proposed Classes, such that preliminary and final injunctive and declaratory relief is appropriate and necessary with respect to each member of each Classes.  Specifically, pursuant to Section 20-24.1, the DMV automatically and systematically revokes licenses in an unconstitutional manner—without any determination of willfulness or ability to pay, without a pre-deprivation hearing, and without adequate notice or opportunity to be heard—that is generally applicable to both of the proposed Classes.

92.     Accordingly, (a) a declaration that Section 20-24.1, along with the DMV's practice of enforcing the statute, violate the Fourteenth Amendment; (b) an injunction that enjoins enforcement of Section 20-24.1 by the DMV; (c) an injunction that prohibits the DMV from revoking the licenses of individuals for non-payment under Section 20-24.1; and (d) an injunction that mandates the lifting of license revocations and the restoration of unconstitutionally revoked licenses for non-payment under Section 20-24.1, would benefit every member of each of the proposed Classes.

93.     ***Rule 23(g)***: Plaintiffs respectfully request that the undersigned be appointed as Class Counsel.  The undersigned attorneys from the Southern Poverty Law Center, the Southern Coalition for Social Justice, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of North Carolina have experience in class-action litigation involving complex civil rights matters in federal court and knowledge of the

26

relevant constitutional and statutory law and Defendant's practice of revocation. Counsel also have the resources, expertise, and experience to prosecute this action.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment of the U.S. Constitution**
**(Equal Protection and Due Process *Bearden* Violation)**

94.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

95.     Plaintiff Mr. Johnson asserts this claim on behalf of himself and the proposed Future Revocation Class he seeks to represent.

96.     Plaintiff Ms. Smoot also brings this claim on behalf of herself and the behalves of the proposed Revoked Class she seeks to represent.

97.     The Fourteenth Amendment of the U.S. Constitution prohibits punishing individuals for non-payment without first determining that they had the ability to pay and willfully refused to make a monetary payment. *See Bearden v. Georgia*, 461 U.S. 660 (1983).

98.     Section 20-24.1 of the North Carolina General Statutes requires the DMV to indefinitely revoke motorists' licenses for non-payment of their fines, penalties, or court costs for a motor vehicle offense, without any determination that they willfully refused to pay.

Case 1:18-cv-00467-TDS-LPA     Document 1     Filed 05/30/18     Page 27 of 35

99.     Pursuant to Section 20-24.1, Defendant also indefinitely revokes motorists' licenses for non-payment of their fines and costs for a motor vehicle offense, without any determination that they willfully refused to pay.

100.     Plaintiffs have a substantial interest in their drivers' licenses.

101.     Revoking the driver's license of a motorist who does not have the means to pay, through no fault of her own, does not reasonably further any legitimate government interest.

102.     There are alternate means to effectuate North Carolina's interest in collecting unpaid fines, penalties, and court costs, including, *inter alia*, extending the time to make payments, reducing the amount owed, or ordering a motorist to complete community service or coursework.

103.     Section 20-24.1 violates Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution by mandating the revocation of motorists' driver's license for non-payment, without first determining they willfully refused to pay.

104.     The DMV's revocations of licenses under Section 20-24.1 also violates Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution by mandating the revocation of motorists' driver's license for non-payment, without first determining that they willfully refused to pay.

## SECOND CLAIM FOR RELIEF
### Fourteenth Amendment of the U.S. Constitution
### (Procedural Due Process — Failure to Provide a Pre-Deprivation Hearing)

105.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

106.     Plaintiff Mr. Johnson asserts this claim on behalf of himself and the proposed Future Revocation Class he seeks to represent.

107.     Plaintiff Ms. Smoot also brings this claim on behalf of herself and the proposed Revoked Class she seeks to represent.

108.     The Fourteenth Amendment of the U.S. Constitution prohibits the State of North Carolina from depriving any person of life, liberty, or property without due process of law.

109.     The cornerstone of due process when a property or liberty interest is at stake is notice and a meaningful opportunity to be heard in a meaningful time and in a meaningful manner.

110.     Neither the North Carolina General Code, including Sections 20-24.1 and 20-24.2, nor the DMV mandates a deprivation hearing before indefinitely revoking a license for non-payment of fines and costs.

111.     Neither the North Carolina General Code, including Sections 20-24.1 and 20-24.2, nor the DMV mandates an inquiry into willfulness before indefinitely revoking a license for non-payment of fines and costs.

29

112.    Sections 20-24.1 and 20-24.2 of the North Carolina General Statutes create a substantive standard for revocation of driver's licenses that involves the following factors: whether a driver (1) failed to pay fines and fees 40 days after due, and (2) did so willfully or in bad faith. Consequently, whether an individual has willfully failed to pay fines and court costs is a fact that is material to whether a license should be indefinitely revoked.

113.    North Carolina motorists have a substantial interest in their driver's licenses.

114.    The process established under Sections 20-24.1 and 20-24.2 and by the DMV creates a substantial risk of erroneously revoking the licenses of those who did not willfully fail to pay or have made good faith efforts to pay, even though the Legislature determined that these facts are material to the decision to indefinitely revoke a license. Yet the process established by these statutory provisions and implemented by the DMV does not mandate a pre-deprivation hearing and determination of willfulness. Thus, it is impossible for the DMV to accurately identify the individuals whose licenses should be revoked for willful non-payment and those whose licenses should not be revoked because they were unable to pay.

115.    A pre-revocation hearing will reduce the risks of erroneous deprivation by permitting an inquiry into willfulness and good faith.

116.    A pre-revocation hearing to determine willful non-payment would not impose substantial fiscal and administrative burdens on the State.

117. To the extent a pre-revocation hearing would impose some fiscal or administrative burdens on the State, these burdens are outweighed by the driver's substantial interest in maintaining a license and in the need to ensure erroneous revocations do not occur.

118. There exist no extraordinary circumstances, important governmental or general public interests—including public safety—that justifies the absence of a hearing and willfulness determination before revoking licenses of drivers for non-payment. Indeed, there is no connection between failure to pay and a driver's ability to safely operate a vehicle.

119. Rather, the State's primary interest at stake here is the collection of fines and costs. The State's financial interest in the collection of fines and costs is not advanced by revoking the licenses of those who cannot afford to pay and thus, is not advanced without a pre-deprivation hearing.

120. The revocation of Plaintiffs' licenses for non-payment without a pre-revocation hearing to evaluate ability to pay and to determine willfulness violates the Procedural Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

## THIRD CLAIM FOR RELIEF
### Fourteenth Amendment of the U.S. Constitution
### (Procedural Due Process —Failure to Provide Adequate Notice)

121.      Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

122.      Plaintiff Mr. Johnson asserts this claim on behalf of himself and the proposed Future Revocation Class he seeks to represent.

123.      Plaintiff Ms. Smoot also brings this claim on behalf of herself and the behalves of the proposed Revoked Class she seeks to represent.

124.      The Fourteenth Amendment of the U.S. Constitution prohibits the State of North Carolina from depriving any person of life, liberty, or property without due process of law.

125.      The cornerstone of due process when a property interest is at stake is notice and a meaningful opportunity to be heard in a meaningful time and in a meaningful manner.

126.      Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action; to accurately describe legal rights and options available to the parties; and to afford them an opportunity to present their objections.

127.      In circumstances where a punishment may be imposed, notice must adequately inform the party as to what the critical issue of the hearing will be.

128.      The DMV fails to provide adequate notice to drivers either before or after licenses are revoked for failure to pay fines and costs, in violation of the Due Process

32

Clause. The notice provided (1) misleadingly informs motorists that the only way they can prevent or end a license revocation is by paying the fines and costs owed in full; (2) fails to provide any notice about a right to a hearing; (3) fails to identify the remedies available under N.C. Gen. Stat. Ann. Section 20-24.1(b)(4); and (4) fails to inform the driver that ability to pay will be a critical issue at any hearing.

129.    The license revocations of Plaintiffs and members of both proposed Classes for non-payment, without adequate notice, violates the Procedural Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a.    Assume jurisdiction over this action;

b.    Certify a class, referred to above as the Future Revocation Class, under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiff Mr. Johnson, related to the First, Second, and Third Claims for Relief;

c.    Certify a class, referred to above as the Revoked Class, under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiff Ms. Smoot, related to First, Second, and Third Claims for Relief;

d.    Issue a declaration that Section 20-24.1 of the North Carolina General Statutes and the DMV's revocation of licenses for nonpayment thereunder:

i.    violate the equal protection and due process guarantees of the Fourteenth Amendment of the U.S. Constitution, as articulated in *Bearden v.*

33

*Georgia*, by revoking a motorist's driver's license for non-payment without an inquiry into ability to pay and a finding that the motorist willfully failed to pay;

    ii.    violate the Procedural Due Process Clause of the Fourteenth Amendment of the U.S. Constitution by failing to affirmatively provide motorists a pre-deprivation opportunity to be heard on their inability to pay and to affirmatively inquire into willfulness and good faith before the revocation; and

    iii.    violate the Procedural Due Process Clause of the Fourteenth Amendment of the U.S. Constitution by failing to provide adequate notice of the opportunity to raise inability to pay or to otherwise challenge the revocation.

e.    Enter an injunction to:

    i.    enjoin Section 20-24.1(a)(2) and (b)(3)-(4);

    ii.    prohibit the DMV from revoking drivers' licenses for non-payment under Section 20-24.1(a)(2); and

    iii.    mandate the DMV to lift current license revocations entered pursuant to Section 20-24.1(a)(2), to reinstate licenses without charging a reinstatement fee if there is no other reason to continue the revocation, and to provide notice to the license-holders of this change.

f.    Award prevailing party costs, including attorney fees; and

34

g.      Grant such other relief as the Court deems just and appropriate.

Dated May 30, 2018.                    Respectfully submitted,

                                       /s/ Kristi L. Graunke
                                       Kristi L. Graunke
                                       *On behalf of Counsel for Plaintiffs*

Christopher A. Brook (NC Bar No.       Kristi L. Graunke (NC Bar No. 51216)
33838)                                 Emily C.R. Early*
Cristina Becker (NC Bar No. 46973)     SOUTHERN POVERTY LAW CENTER
Sneha Shah*                            150 E. Ponce de Leon Ave., Ste. 340
AMERICAN CIVIL LIBERTIES UNION         Decatur, Georgia 30030
OF NORTH CAROLINA LEGAL                T: 404-221-4036
FOUNDATION                             E: kristi.graunke@splcenter.org
P.O. Box 28004                         E: emily.early@splcenter.org
Raleigh, North Carolina 27611
T: 919-834-3466                        Samuel Brooke*
E: cbrook@acluofnc.org                 Danielle Davis*
E: cbecker@acluofnc.org                SOUTHERN POVERTY LAW CENTER
E: sshah@acluofnc.org                  400 Washington Avenue
                                       Montgomery, Alabama 36104
Nusrat J. Choudhury*                   T: 334-956-8200
R. Orion Danjuma*                      F: 334-956-8481
AMERICAN CIVIL LIBERTIES UNION         E: samuel.brooke@splcenter.org
125 Broad Street, 18th Floor           E: danielle.davis@splcenter.org
New York, New York 10004
T: 212-519-7876                        Laura Holland (NC Bar No. 50781)
T: 212-549-2563                        SOUTHERN COALITION FOR SOCIAL
E: nchoudhury@aclu.org                 JUSTICE
E: odanjuma@aclu.org                   1415 W. NC Hwy 54, Suite 101
                                       Durham, North Carolina 27707
                                       T: 919-323-3380 x.161
                                       F: 919-323-3942
*Appearing by Special Appearance*      E: lauraholland@southerncoalition.org
*pursuant to L.R. 83.1(d)*

                                       **Counsel for Plaintiffs**

35