IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SETI JOHNSON, *et al.*, on behalf of
themselves and those similarly situated,

    Plaintiffs,

v.

TORRE JESSUP, in his official capacity
as Commissioner of the North Carolina
Division of Motor Vehicles,

    Defendant.

Case No. 1:18-cv-467

(CLASS ACTION)

## BRIEF IN SUPPORT OF THE PARTIES' JOINT
## MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(e)(2), Plaintiff Class Representatives Seti Johnson, Marie Bonhomme-Dicks, and Nichelle Yarborough ("Class Representatives") and Defendant Torre Jessup jointly request the Court to enter a final order and judgment approving the Parties' proposed class settlement. As discussed more fully below: (1) the notice provided to the Class Members[1] fully satisfied the requirements

---

[1] The parties use the term "Class Members" to refer to all members of both certified classes in this case:

> The "Revoked Class," consisting of all individuals whose driver's licenses were revoked by the DMV on or after May 30, 2015, due to their failure to pay fines, penalties, or court costs assessed by a court for a traffic offense, and whose driver's licenses remain so revoked.
>
> The "Future Revocation Class," consisting of all individuals whose driver's licenses will be revoked in the future by the DMV due to their failure to pay fines, penalties, or court costs assessed by a court for a traffic offense.

1

of Federal Rule of Civil Procedure 23 and the requirements of due process; and (2) the proposed class settlement is fair, reasonable, and adequate.

## BACKGROUND

The Parties adopt and incorporate their statement of factual and procedural background laid out in the Memorandum of Law in Support of the Parties' Joint Motion for Preliminary Approval of Proposed Class Settlement, filed July 1, 2021. *See* ECF No. 88-1 at 2-7.

On October 15, 2021, the Court preliminarily approved the parties' proposed class settlement, which will settle all claims of Plaintiffs and the Class Members in this action. ECF No. 93 at 8-12. The order approved the form, content, and manner of notifying Class Members of the proposed class settlement, and provided Class Members until January 13, 2022, to file objections to the proposed class settlement. *Id*.

Accordingly, the Parties took the following steps to provide Class Members with notice:

- On November 18, 2021, Plaintiffs published a "Settlement Website" prominently displaying the "Website Notice" approved by the Court, *see id.* at 9, which included links to the First Amended Complaint in this action and the proposed class settlement, among other information. The Settlement Website remains active, and to date, has had 7,547 unique visitors. Declaration of Emily Early, attached here as Exhibit 1, ¶¶ 3, 8

- On November 19, 2021, and December 10, 2021, Defendant emailed each Class Member for whom the North Carolina DMV has an email address the "Email Notice" of proposed class settlement approved by the Court, *see* ECF No. 93 at 8, which included a link to the Settlement Website. On November 19, 2021, a total of 56,177 likely Class Members were emailed, which resulted in 45,990

---

ECF No. 93 at 2, 4.

successful deliveries, and again on December 10, 2021, a total of 57,110 likely Class Members were emailed, which resulted in 46,682 successful deliveries. Declaration of Katherine Hancock, attached here as Exhibit 2, ¶¶ 2-6.

- Since November 15, 2021, Defendant has prominently posted the Website Notice on the North Carolina DMV website and a printed hard copy in conspicuous areas of its 117 DMV offices throughout the State of North Carolina. *Id.* ¶ 7.

- From November 22, 2021, through December 19, 2021, Plaintiffs launched and ran targeted social media advertisements on Facebook and Instagram. The social media advertisements contained brief summaries about the proposed class settlement and a link directing likely Class Members to the Settlement Website. Early Decl., Ex. 1, ¶ 11. These social media targeted advertisements targeted moderate- to low-income users, ages 18 to 75(populations with the highest suspension rates) in Wake, Guilford, Cumberland, Forsyth, and Robeson Counties (the counties which have the highest numbers of suspensions for failure to pay in North Carolina).

- On November 22, 2021, Plaintiffs also initiated Google Ads, an advertising service by Google, to direct Google searchers to the Settlement Website based on search terms related to the instant lawsuit and proposed settlement that they entered into a Google search at www.google.com. Google Ads enabled promotion of the Settlement Website, www.ncdmvsettlement.org, to the top of a Google search engine results page, along with advertisements on the content of the proposed settlement, when users searched for the settlement search terms. *See* Google, Google Ads Help, https://bit.ly/3rKwP79 (last visited Jan. 22, 2022). Google Ads ran through December 19, 2021. Early Decl., Ex. 1, ¶ 15.

In sum, the first round of notice to likely Class Members was initiated as early as November 15, 2021, and all components of notice to Class Members were completed by November 22, 2021. *See generally* Early Decl., Ex. 1; Hancock Decl., Ex. 2. Class Members therefore had 59 days to file any objections to the proposed class settlement. Class counsel have received 233 emails or web communications from likely Class

Members.[2] Early Decl., Ex. 1, ¶¶ 17, 22. Of these, none contained statements of opposition to the proposed settlement that could be construed as actual objections to the settlement. *Id.* ¶¶ 22-23.

**ARGUMENT**

The claims of a certified class can be settled only with the court's approval. Fed. R. Civ. P. 23(e). This process entails that the court direct notice in a "reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), so that class members have an opportunity to object to the proposal, Fed. R. Civ. P. 23(e)(5)(A). Before it can grant final approval, the court must determine whether the proposal is "fair, adequate, and reasonable" given the relative strength of the parties' claims and the projected length and expense of continued litigation. *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (citation and quotation marks omitted); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976). The Court should "be guided by the general principle that settlements are encouraged." *North Carolina*, 180 F.3d at 581 (internal citation omitted).

For the reasons discussed at length in the Memorandum of Law in Support of the Parties' Joint Motion for Preliminary Approval, which the Parties adopt and incorporate

---

[2] Plaintiffs have summarized in a spreadsheet attached to the Early Declaration all responses or comments submitted to Plaintiffs' and Class Counsel and Defendant's Counsel via the email and the Settlement Website, but have redacted the names, addresses, and email addresses of all individuals to protect their identity and confidential contact information. *See* Early Decl., Ex. 1, ¶¶ 19-21 & Attach A. Upon the Court's request, the Parties can provide the Court under seal the individuals' names and contact information as well as each individual objection in the original form in which it was submitted to counsel.

4

herein, the proposed class settlement satisfies this standard, and the Court should grant final approval of class settlement. ECF No. 88-1 at 2-7. As directed by the Court in its October 15, 2021 order, the Parties supplement those arguments with a discussion below of: (1) the sufficiency of the notice provided to Class Members; and (2) the fairness, reasonableness, and adequacy of the proposed class settlement in light of the objections received from Class Members.

I.     **Notice of the Proposed Class Settlement Satisfies Rule 23 and Due Process.**

In this case, all Class Members are part of a Rule 23(b)(2) class seeking injunctive and declaratory relief. *See* ECF No. 93 at 4. A court "must direct notice in a reasonable manner to all class members who would be bound by a [proposed class settlement agreement]." Fed. R. Civ. P. 23(e)(1)(B). Likewise, under the constitutional guarantee of procedural due process, "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Parties have effectuated notice that meets these standards. As directed and approved by the Court, Plaintiffs published a Settlement Website, prominently displaying information regarding the lawsuit, defining the class and class claims and issues, and explaining the proposed class settlement and how to object. Included with counsel's information on the Settlement Website was an email address created by Plaintiffs' and Class Counsel in Microsoft Outlook—contact@ncdmvsettlement.org (the "group email address" or "email group")—where individuals who claimed to be affected by the DMV

5

revocation scheme and have an interest in this suit could share their objections to, comments on, or other concerns about, the proposed class settlement in this case. Early Decl., Ex. 1, ¶¶ 3-4.

Defendant also emailed the Email Notice, Doc. 83-3, to each Class Member for whom it had an email address. The content of the Email Notice, which has been previously approved by the Court, ECF No. Doc. 93, informed class members of the lawsuit, the proposed class settlement, and class and Defendant's counsel's contact information, and how to object to the settlement. It also provided a hyperlink to the Settlement Website. The Email Notice was disseminated to Class Members on November 19, 2021, to 56,177 total recipients, which resulted in 45,990 successful deliveries, and again on December 10, 2021, to 57,110 e-mails, which resulted in 46,682 successful deliveries. Hancock Decl., Ex. 2, ¶¶ 2-6.

To account for the possibility of Class Members who lack an email address or whose email addresses may have changed, Plaintiffs further distributed notice of the proposed settlement and Settlement Website through social media advertisements on Facebook and Instagram that were geographically and demographically targeted toward communities likely to have large numbers of Class Members—specifically moderate- to low-income users between $0 and $50,000 in annual income; ages 16 to 75, in the counties with the highest numbers of driver license suspensions resulting from failures to comply: Wake, Guilford, Cumberland, Forsyth, and Robeson. *See* Duke University Law School, Brandon L. Garrett, & William Crozier, *Driver's License Suspension in North Carolina* (2019), *available at* https://bit.ly/33er8pF (finding strong correlation between North Carolina

counties with highest number of suspensions—Wake-26,710; Guilford-25,400; Cumberland-7,112; Forsyth-9,693; and Robeson-10,949—and North Carolina counties with the highest populations of 16+ year-olds as Wake, Guilford, Cumberland, and Forsyth); USA.com, N.C. Median Household Income County Rank, https://bit.ly/3Ey2wol (identifying Wake, Guilford, Cumberland, and Forsyth as counties with median income less than $50,000); Early Decl., Ex. 1, ¶ 12. The social media advertisements reached an estimated 243,811 people. Early Decl., Ex. 1, ¶ 14.

Additionally, Plaintiffs' and Class Counsel used Google Ads, an advertising service by Google, to direct Google searchers to the Settlement Website based on search terms related to the instant lawsuit and proposed settlement that they entered into a Google search at www.google.com. *Id.* ¶¶ 15-16. Those terms included: "class-action lawsuit north carolina dmv," "driver's licenses suspension fees," "Johnson v. Jessup," "lawsuit north carolina dmv," "License Suspension for Non-Payment," "North Carolina Division of Motor Vehicles," "North Carolina DMV," North Carolina driver's licenses," "special notice dmv," special notice north carolina dmv," and "suspend licenses north Carolina," "unpaid traffic tickets drivers license" (hereinafter the "settlement search terms"). In short, Google Ads enabled promotion of the Settlement Website, www.ncdmvsettlement.org, to the top of a Google search engine results page, along with advertisements on the content of the proposed settlement, when users searched for the settlement search terms. *See* Google, Google Ads Help, https://support.google.com/google-ads/answer/6319?hl=en (last visited Jan. 22, 2022). Google Ads resulted in 38,812 ad impressions (i.e., content

and links promoting the Settlement Website) appearing in the top search result on Google.com to users searching the settlement search terms. Early Decl., Ex. 1., ¶ 16.

Courts have previously noted—particularly where a class is likely to be transient or geographically dispersed—that social media methods for notice could satisfy even the more stringent notice standard for notice of Rule 23(b)(3) class certification, which requires not just the provision of notice in a reasonable manner, but the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Roes, 1-2 v. SFBSC Mgm't, LLC*, 944 F.3d 1035, 1047-48 (9th Cir. 2019) (explaining that social media or postings on online message boards may be sufficient forms of notice for a Rule 23(b)(3) class).

Accordingly, the Parties have implemented notice that is appropriate and reasonably calculated to reach Class Members and afforded them an opportunity to present their objections. Indeed, the Settlement Website has been visited by over seven thousand individual users, and the Parties have received hundreds of communications regarding the lawsuit and proposed class settlement. Early Decl., Ex. 1, ¶¶ 5-6, 8, 17. The Court should thus conclude the notice amply satisfies Rule 23(c)(2)(A), Rule 23(e)(1)(B), and the mandates of due process.

## II. The Proposed Class Settlement is Fair, Reasonable, and Adequate.

Because the proposed settlement agreement would bind all members of the Plaintiff Classes, "the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

On this requirement, the Parties respectfully refer the Court to the Memorandum of Law in Support of the Parties' Joint Motion for Preliminary Approval, ECF No. 88-1, in which the parties discussed at length why the proposed settlement is fair, reasonable, and adequate. As described more fully therein, the proposed class settlement is the product of months of negotiation conducted at arms-length by experienced attorneys against the backdrop of several rounds of briefing on motions for preliminary injunction, judgment on the pleadings, and class certification that were supported by documentary evidence and joint stipulations of facts. The proposed settlement treats Class Members equitably, as all Class Members will receive improved notices from Defendant that better inform them of their options to avoid driver's license revocation. All Class Members will also have access to a new Help and Resources Website containing information, trainings, instructional videos, and other materials focused on assisting them with resolving "failure to pay" driver's license suspensions.

Having collected and reviewed Class Members' comments and responses to the proposed settlement over a period of nearly 60 days, the Parties now further supplement their prior briefing on the question of the fairness, reasonableness, and adequacy of the proposed class settlement. The substantial number of statements of approval and/or non-objection from expected Class Members supports a finding that the proposed settlement is fair, reasonable, and adequate and weighs in favor of the Court's final approval of the proposal.

In considering a proposed class settlement, courts should weigh "the degree of opposition to the settlement" as one factor in determining whether the proposal is adequate

and reasonable. *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019) (citation omitted). "The attitude of members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration of the trial court," though "'a settlement is not unfair or reasonable simply because a large number of class members oppose it.'" *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (citations omitted).

Here, notice was provided to thousands of Class Members, and class and Defendant's counsel received nearly 250 written communications regarding the proposed class settlement—the overwhelming majority of which expressed support of or interest in the proposed settlement and thus weigh in favor of final approval of the proposed settlement. *See* Early Decl., Ex. 1, ¶¶ 17, 21-22. Of those hundreds of comments and responses received by counsel, only two indicated they wanted to make an objection but provided no further information about the objection and thus, no statements that could be construed as an actual opposition or objection to the proposed settlement. Early Decl., Ex. 1, ¶¶ 21-23; *see also id.* Attach. A, Rows 205 (objection #201) & 236 (objection # 232). The small number of objections of this nature should not prevent final approval of the proposed settlement. *Accord Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974) (holding trial court did not abuse discretion in approving settlement to which more than twenty percent of class objected); *In re Montgomery Real Estate Antitrust Litigation*, 83 F.R.D. 305 (D. Md. 1979) (approving settlement to which six percent of class objected);

In short, most communications from likely Class Members indicate an urgent need for the resources that will be provided in the Help and Resources Website as well as the improved DMV notices, the DMV staff training on those notices and settlement, and the

monitoring and reporting of data on settlement implementation, among other terms. *See* Early Decl., Ex. 1, ¶ 22; *see generally id.*, Attach. A.

## CONCLUSION

For the foregoing reasons, the Parties jointly respectfully request the Court to grant their Joint Motion for Final Approval and issue a final order that approves the proposed settlement agreement, ECF. No. 88-2. Once the approved Settlement Agreement is signed by the Parties, per Paragraph 18 of the Settlement Agreement, the Parties will take the required steps to move the Court for an order retaining limited jurisdiction to enforce the settlement and dismissing this case.

Respectfully submitted this 31st day of January 2022,

/s/ Emily Early
Emily Early
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031-1287
Tel.: 404-521-6700

Amreeta S. Mathai**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 202-313-1625

Jeffrey Loperfido
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Ste. 101
Durham, NC 27707
Tel.: 919-794-4213

Kristi Graunke
Irena Como

11

Michele Delgado
AMERICAN CIVIL LIBERTIES UNION OF
NORTH CAROLINA LEGAL FOUNDATION
P.O. Box 28004
Raleigh, NC 27611
Tel.: 919-834-3466

***Attorneys for Plaintiffs and Class Counsel***
*** *court admission application forthcoming*

/s/ Kathryne E. Hathcock
Kathryne E. Hathcock
Neil Dalton
NORTH CAROLINA DEPARTMENT OF
JUSTICE
Post Office Box 629
Raleigh, North Carolina 27602
Tel.: (919) 716-6650

***Attorneys for Defendant***

12

# CERTIFICATE OF WORD COUNT

I certify that the foregoing does not exceed 6,250 words, as calculated by word processing software, in compliance with Local Civil Rule 7.3(d).

This 31st day of January 2022.

/s/ Emily C.R. Early
Emily Early
*Class Counsel*

# CERTIFICATE OF SERVICE

I certify that this day I served the foregoing by filing it with the CM/ECF system, which has provided notice to all counsel of record.

This 31st day of January 2022.

/s/ Emily Early
Emily Early
*Class Counsel*